No. 72,568

TIMOTHY H. BROWN, *Appellant*, v. STATE OF KANSAS, SEDGWICK COUNTY COMMISSIONERS, and MIKE HILL, SHERIFF OF SEDGWICK COUNTY, KANSAS, *Appellees*.

927 P.2d 938

Opinion filed December 6, 1996.

*John E. Pyles*, of Wichita, argued the cause and was on the supplemental brief, and *Robert L. Mitchell*, of Law Office of Robert L. Mitchell, of Wichita, was on the brief for appellant.

*Ed L. Randels*, assistant county counselor, argued the cause and was on the briefs for appellees Sedgwick County Commissioners and Mike Hill.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Timothy Brown filed an action against the State of Kansas, the Board of Sedgwick County Commissioners, and Mike Hill, the Sheriff of Sedgwick County, alleging that he was negligently arrested. The district court granted the defendants' motion to dismiss on the ground that the limitations period had expired. The Court of Appeals reversed and remanded, and we granted the defendants' petition for review on May 3, 1996.

Timothy Brown was arrested in Oklahoma and returned to Sedgwick County, Kansas, on February 28, 1992, which was 28 days after the warrant for his arrest had been withdrawn by order of the

Sedgwick County District Court. On September 28, 1993, Brown
sent a written notice of claim to the Board of County Commis-
sioners. The notice of claim states in part:

"3. On January 30, 1992, a warrant pending against the Claimant was withdrawn
by Judge Paul W. Clark of Sedgwick County. . . . On February 28, 1992, Claim-
ant was arrested due to the negligence of Sheriff Mike Hill and his deputies.

"4. The Claimant's injuries were loss of wages and employment, including his
benefits, [and] expenses incurred to obtain his release from custody. Claimant also
suffered injuries of embarrassment, mental anguish, and invasion of privacy."

On May 27, 1994, he filed a petition initiating a negligence action
against the State of Kansas, the Board of Sedgwick County Com-
missioners, and Sheriff Hill. Brown's petition repeated the factual
circumstances alleged in the notice of claim, deleted the statement
describing his injuries, and added the following: "The negligence
of the Defendants caused the Plaintiff to suffer damages in excess
of $50,000.00 dollars."

The county commissioners and Mike Hill (County Defendants)
filed a motion to dismiss Brown's action on the ground that it was
barred by the statute of limitations. County Defendants argued
alternative grounds for dismissal. First, they argued that Brown's
claims actually were for false imprisonment and were barred by
the 1-year limitation of K.S.A. 60-514. In the alternative, they ar-
gued that Brown's action was time barred even if it was subject to
the 2-year statute of limitations governing negligence actions,
K.S.A. 60-513.

The district court granted the motion to dismiss on the first
ground—the action was for false imprisonment, was subject to the
1-year limitations period, and was filed outside that period. The
district court stated the following conclusions of law:

"1. The Plaintiff's claim is for false imprisonment.

"2. Arrests are intentional acts, and actions arising out of the arrest procedure
are intentional torts subject to the one year period of limitations of K.S.A. 1993
Supp. 60-514.

"3. That while the matters of law designated as numbers one and two above
are dispositive of this case, the Court notes that the filing of a claim pursuant to
K.S.A. 12-105b extends or tolls the statute of limitations period for 120 days, and
if the Court had found that the two year statute of limitations had controlled, then
the petition would have been filed in a timely manner, i.e., within 120 days of

February 28, 1994—the date of the running of the 2 year limitation period of K.S.A. 1993 Supp. 60-513."

Brown appealed the dismissal of his action. County Defendants did not cross-appeal from the district court's third conclusion of law, that the petition would have been timely filed if it sounded in negligence.

The Court of Appeals, in an unpublished opinion filed March 8, 1996, reversed and remanded. As the Court of Appeals analyzed it, the principal question was "whether negligence that results in a false arrest can create a separate negligence cause of action." The Court of Appeals answered the question in the affirmative, thus concluding that the district court erred in dismissing Brown's claim on the ground that it was subject to and barred by the 1-year statute of limitations for false imprisonment.

The Court of Appeals declined to consider County Defendants' alternative argument that the district court misconstrued K.S.A. 12-105b and that Brown's action actually would be barred by application of the 2-year statute of limitations. Because County Defendants had not cross-appealed the issue, the Court of Appeals applied the rule that new issues will not be considered by a reviewing court.

County Defendants filed a petition for review in which they raised two issues. First, they argued that the Court of Appeals erroneously concluded that Brown's action was subject to the 2-year statute of limitations for negligence. Second, they argued in the alternative that the Court of Appeals erroneously declined to consider the question whether the district court misconstrued K.S.A. 12-105b.

We find that the sole issue on appeal is whether Brown's claim is subject to the 1-year statute of limitations for the intentional tort of false imprisonment. The parties agree that this court's review is unlimited. The interpretation and application of a statute of limitations is a question of law for which the court's review is unlimited. *Martindale v. Tenny*, 250 Kan. 621, 634, 829 P.2d 561 (1992). Likewise, the court's review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

K.S.A. 60-513(a)(4) provides: "The following actions shall be brought within two years: . . . An action for injury to the rights of another, not arising on contract, and not herein enumerated." K.S.A. 60-514(b) specifies that "[a]n action for assault, battery, malicious prosecution, or false imprisonment" shall be brought within 1 year. Thus, false imprisonment is one of the actions for injury to the rights of another which is enumerated in the Kansas statutes. The terms "false arrest" and "false imprisonment" are both used in the courts of this state to mean "any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere." *Gariety v. Fleming*, 121 Kan. 42, 45, 245 Pac. 1054 (1926). The question in this case is whether a cause of action which alleges negligent conduct which results in false arrest and consequent damages exceeding $50,000 is a cause of action for negligence or false imprisonment for the purpose of the statute of limitations.

Brown's theory of negligence is that County Defendants failed to check court records under their possession and control before arresting him. He asserts that a reasonable law enforcement officer exercising ordinary care would have checked the records before arresting someone on a 28-day-old warrant. According to Brown, County Defendants' failure to do so resulted in Brown's being arrested after the warrant against him had been withdrawn.

The Court of Appeals relied on *Griffin v. State*, 14 Kan. App. 2d 803, 799 P.2d 521 (1990), which had not been cited by either party, as authority for its decision. The Court of Appeals viewed *Griffin* as standing for the proposition that a cause of action for negligence may be created by conduct which results in plaintiff's wrongful arrest.

*Griffin* had the misfortune to have the same name as another Kansan who had been convicted of driving on a suspended license. The Department of Revenue mistakenly suspended plaintiff Griffin's license based on information about the other Griffin. When plaintiff Griffin was stopped for speeding, a computer check of his license number showed that it had been suspended and he was arrested. Griffin sued the Department of Revenue and the State of Kansas for negligence and false arrest. The district court dismissed the Department of Revenue and the false arrest count. A

jury favored Griffin, assessed total damages of $7,000, and appor-
tioned 65% of the fault to the State and 15% to the arresting of-
ficer. The State appealed three issues—application of an exception
to the Kansas Tort Claims Act, recoverability of "mental damages,"
and statutory authority of the law enforcement officer to make the
arrest. Finding no merit in these issues, the Court of Appeals af-
firmed.

The question whether a cause of action for negligence could be
created by negligent conduct which resulted in plaintiff's wrongful
arrest was neither asked nor answered in *Griffin*. Thus, although
the jury verdict awarding damages for negligent conduct which
resulted in plaintiff's wrongful arrest was allowed to stand, it does
not necessarily follow that it is authority for the principle that a
cause of action for negligence may be created by conduct which
results in plaintiff's wrongful arrest.

In *Griffin*, the Court of Appeals cited *Bowman v. Doherty*, 235
Kan. 870, 686 P.2d 112 (1984), a legal malpractice action, as con-
trolling on the question of recoverability of mental damages. Bow-
man was arrested on a charge of aggravated failure to appear for
scheduled court proceedings involving Bowman's giving a worth-
less check. The jury found that Bowman had retained Doherty,
who had helped him with previous legal matters, to handle the
worthless check case. Doherty took no action, and, as a result,
Bowman's bond was forfeited. The district court denied Bowman's
claim for mental damages. This court disagreed:

"The act of the attorney which led to the injury suffered by his client was the
failure of the attorney to act, which caused the client to be placed in jail and
deprived of his freedom. One being negligently deprived of his freedom suffers
an injury which could cause mental distress." 235 Kan. at 877.

The Court of Appeals in the present case makes a reference to
*Bowman*. Bowman did not sue the law enforcement officers or
governmental authority responsible for his being arrested. Instead,
he sued Doherty, the lawyer whose inaction caused Bowman to be
arrested. There was no element of restraint in Doherty's conduct,
and, therefore, it would not have given rise to a false arrest action.
See *Munsell v. Ideal Food Stores*, 208 Kan. 909, 924-25, 494 P.2d

1063 (1972). Nor would the conduct of the law enforcement officers or agency which arrested him have given rise to a negligence action.

County Defendants argue that the "Court of Appeals mistakenly relies on its decision in *Griffin.*" They contend that *Griffin* does not control because it does not involve the statute of limitations. According to County Defendants, "[t]here is no language in *Griffin* which takes the cause of action out of the limiting provisions of K.S.A. 60-514, and places it within the general language of K.S.A. 60-513."

Brown also relied on *Jefferson County v. Sterk*, 830 S.W.2d 260 (Tex. App. 1992). Through error, an arrest warrant which had been issued for Sterk in connection with probation revocation proceedings was not withdrawn when the probation matter was resolved. He was arrested on the obsolete warrant. The pivotal issue in that case was unrelated to any issue in the present case—whether a peculiar element of the Texas statutory waiver of sovereign immunity had been satisfied. Sterk was tried to the court, which awarded damages to him for injuries caused by the county's negligence. The trial court included the following among its findings of fact: "The Court finds that the [arrest warrant] entered into evidence by [Sterk] is the personal property, the use of which forms the basis of this lawsuit under the Texas Tort Claims Act." 830 S.W.2d at 261. The Texas Court of Appeals concluded that an arrest warrant is not tangible personal property. Thus, Sterk did not have a cause of action under that state's Tort Claims Act. 830 S.W.2d at 263.

One of the nonmeritorious points raised by Jefferson County was that the trial court erred in awarding damages because the tort claims act bars recovery for any intentional tort, including false arrest or false imprisonment. The Court of Appeals overruled this point of error with one sentence:

"The point is without merit because the fact that an action for an intentional tort is barred does not prevent an injured party from pursuing a claim for simple negligence arising out of the same facts. *Texas Department of Mental Health and Mental Retardation v. Petty*, 817 S.W.2d 707, 712 (Tex. App.—Austin 1991, writ granted)." 830 S.W.2d at 261-62.

Nonetheless, Sterk's judgment was reversed on the ground that the arrest warrant did not constitute " 'tangible personal property' the misuse of which is actionable under the Tort Claims Act." 830 S.W.2d at 262.

The County Defendants countered Brown's reliance on *Sterk* with references to cases from Wisconsin. The lessons they urge the court to draw from the Wisconsin opinions are that "in Wisconsin there is no such tort as negligent false imprisonment" and that intentional conduct cannot be transformed into negligence merely by a litigant's labeling.

In *Nelson v. Milwaukee*, 57 Wis. 2d 166, 203 N.W.2d 684 (1973), the trial court's order sustaining the city's demurrer was affirmed. Nelson was arrested in a restaurant during an argument between two other customers. Nelson alleged that he was negligently confined in that the arresting officers failed to thoroughly investigate before arresting him and failed to permit him to explain his actions. The appellate court concluded that "[t]he only reasonable inference drawn from these facts is that the officers intentionally arrested the plaintiff." 57 Wis. 2d at 170. Nelson's action against the city, therefore, was precluded by statute.

In *Baranowski v. Milwaukee*, 70 Wis. 2d 684, 235 N.W.2d 279 (1975), plaintiff alleged that his home was forcibly entered by police officers who physically abused him without ascertaining the need for force, failed to identify themselves, and failed to determine whether there was probable cause to believe persons engaged in criminal activity would be found there. Baranowski characterized the cause of his alleged injuries and damages as "the joint and several carelessness and negligence" of the police officers. 70 Wis. 2d at 686. It was his position that "the negligence of the officers caused them to commit the intentional acts which in turn caused the injury and the damages" he sought to recover. 70 Wis. 2d at 689. The city argued that "despite characterizing the acts of the officers as negligent, the allegations of the complaint constitute the intentional tort of assault and battery or excessive use of force." 70 Wis. 2d at 687. Adding that the entry was in the nature of a trespass, the court agreed with the city. 70 Wis. 2d at 688, 691.

The County Defendants also direct the court's attention to several cases from the federal courts and the State of Alaska. In *Duenges v. United States*, 114 F. Supp. 751 (S.D.N.Y. 1953), the plaintiff alleged that he suffered injuries due to the government's negligent record keeping. He had been arrested for desertion from the Army even though he actually had been honorably discharged. The district court concluded that his alleged injuries—loss of freedom, humiliation, fear, embarrassment, mental anguish, and loss of earnings—resulted from his arrest rather than from faulty record keeping. Thus, "false arrest and imprisonment are of the very gist and essence of the plaintiff's cause." 114 F. Supp. at 752. Because 28 U.S.C. § 2680(h) (1952) excluded from the provisions of the Federal Tort Claims Act claims arising from false arrest, the government's motion to dismiss was granted. 114 F. Supp. at 752.

In *Gaudet v. United States*, 517 F.2d 1034 (5th Cir. 1975), the district court's dismissal of the complaint was affirmed by the appellate court. Gaudet was charged with making threats against the President. He turned himself in after being pursued for several days in the mountains by law enforcement officers and private citizens, and then the charges were dropped. He brought suit under the Federal Torts Claim Act, alleging that he was accused, warrants were issued, publicity was generated, and law enforcement agencies were advised to apprehend him. He summed up his allegations in this paragraph:

"The negligence, want of care, lack of police procedure, lack of law enforcement procedure, utter confusion and hysteria of employees, agents and representatives of the United States, caused, contributed, participated and/or prolonged and/or has continued to prolong the injuries suffered and to be suffered by Edwin M. Gaudet." 517 F.2d at 1035.

The Court of Appeals reasoned that Gaudet's claim was grounded in intentional tort rather than in negligence. The court stated: "It is the substance of the claim and not the language used in stating it which controls." 517 F.2d at 1035.

In *Stephens v. State, Dept. of Revenue*, 746 P.2d 908 (Alaska 1987), the Supreme Court of Alaska affirmed the trial court's entry of summary judgment against Stephens, who filed suit against the state Department of Revenue, alleging malicious and negligent

prosecution. The malicious prosecution was expressly barred by statute, and the court "decline[d] to recognize the tort of negligent prosecution of a civil action." 746 P.2d at 910. The court stated the following in a footnote:

"We believe that, in general, the state does not owe its citizens a duty of care to proceed without error when it brings legal action against them. To the extent that this contradicts our decision in *Zerbe v. State*, 578 P.2d 597, that case is overruled. There is no question that a person whose wages or bank account are wrongfully seized by the state must be provided a process to get his money back, with interest. Otherwise, there would be a taking. Here, though, the money already has been paid back with interest. This case is about tort damages, not the return of property." 746 P.2d at 912 n.5.

In *Waskey v. Municipality of Anchorage*, 909 P.2d 342 (Alaska 1996), the Alaska Supreme Court quoted the first two sentences of footnote 5 from *Stephens* as being applicable to *Waskey*. The court continued:

"The arresting officer owed [plaintiff] no duty of care to proceed without error when he initiated legal action against [plaintiff's brother]. Because the arresting officer owed plaintiff no duty of care, no duty was breached, and no negligence claim can be maintained.

"This conclusion is in accordance with numerous cases from other jurisdictions which have declined to recognize the duty to conduct criminal investigations in a non-negligent manner and have therefore refused to recognize a tort of negligent investigation of a crime. *See, e.g., Smith v. State*, 324 N.W.2d 299 (Iowa 1982). *See also Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S. Ct. 894, 54 L. Ed. 2d 799 (1978) (no federal common law tort of negligent investigation); *Landeros v. City of Tucson*, 171 Ariz. 474, 831 P.2d 850 (1992); *Johnson v. City of Pacifica*, 4 Cal. App. 3d 82, 84 Cal. Rptr. 246 (1970); *Montgomery Ward Co. v. Pherson*, 129 Colo. 502, 272 P.2d 643 (1954); *Wimer v. State*, 122 Idaho 923, 841 P.2d 453 (1993); and *Bromund v. Holt*, 24 Wis. 2d 336, 129 N.W.2d 149 (1964)." 909 P.2d at 344-45.

Due to the procedural history of this case, the question with which we are concerned is whether an action for recovery of damages suffered as a result of an arrest that occurred as a result of allegedly negligent conduct is an action for the intentional tort of false arrest and thus is barred by the 1-year statute of limitations. The questions addressed in many of the cited authorities involve recognition of causes of action for negligence of law enforcement persons and entities. We, however, are not asked to determine the

soundness of a cause of action for negligent law enforcement activity. In this regard, the Court of Appeals' phrasing of the issue, "whether negligence that results in a false arrest can create a separate negligence cause of action," is broader than it needed to be.

We do not find *Griffin* to be controlling, nor *Sterk* persuasive. Clearly, the present case parallels *Duenges*, 114 F. Supp. 751. The federal court focused on the plaintiff's injuries. The injuries alleged by Duenges resulted from his arrest rather than from negligent record keeping. The federal court therefore concluded that his claims arose from false arrest rather than from negligence. Here, Brown's claim of damages arose from his arrest and not from the officers' negligence.

County Defendants' alleged negligence could be an actionable wrong only in the event that it was the legal cause of Brown's injuries. Under Kansas negligence law, the legal or proximate cause of injury is that "which might have been expected to be directly instrumental in producing the result." *Elliott v. Chicago, Rock Island & Pac. Rld. Co.*, 203 Kan. 273, 284, 454 P.2d 124 (1969). Brown contends that his injuries are consequences of the defendants' negligence, but even his most positive statement of his theory, "Plaintiff-Appellant would not have been arrested 'but for' the negligence of the Defendants-Appellees," shows that the injuries are a step removed from the negligence. The County Defendants' alleged negligence, therefore, is a dubious fit within the operative definition of legal cause. In contrast, the injuries described by Brown in his notice of claim—loss of wages, benefits, and employment, expenses incurred in obtaining release from custody, embarrassment, mental anguish, and invasion of privacy—are indisputably the direct consequences of his arrest. Because Brown's injuries derive from his false arrest and imprisonment, they, rather than the alleged negligence of the officers, are "the very gist and essence of the plaintiff's cause." *Duenges*, 114 F. Supp. at 752.

Notwithstanding that Brown couched his claim in terms of negligence of the officers, "[i]t is the substance of the claim and not the language used in stating it which controls." *Gaudet*, 517 F.2d at 1035. The substance of Brown's claim is for his wrongful arrest

and imprisonment. Thus, his claim is subject to the provisions of K.S.A. 60-514(b) and must be brought within 1 year.

The judgment of the Court of Appeals reversing the district court is reversed. The judgment of the district court is affirmed.