No. 76,374

ALVAN D. JOHNSON, *et al.*, *Appellees*, v. KANSAS PUBLIC EM-
PLOYEES RETIREMENT SYSTEM, *Appellee/Cross-Appellant*, and
CITY OF MANHATTAN, *Appellant.*

(935 P.2d 1049)

Opinion filed April 18, 1997.

*Steve R. Fabert*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, argued
the cause and was on the briefs for appellant City of Manhattan.

*Lawrence J. Logback*, assistant attorney general, argued the cause, and *Carla
J. Stovall*, attorney general, was with him on the brief for appellee/cross-appellant
KPERS.

*Andrea S. Stubblefield*, of Dickson & Pope, P.A., of Topeka, argued the cause
and was on the brief for appellees Johnson, *et al.*

The opinion of the court was delivered by

SIX, J.: This case concerns a public employee pension statute of
limitations controversy arising from a 1974 city-county law enforce-
ment consolidation. The plaintiffs law enforcement officers (offi-
cers) were originally employed by the City of Manhattan (City).
Consolidation changed their employer from the City to the Riley
County Law Enforcement Agency (RCLEA). Sixteen years after
the consolidation, the officers brought their pension benefits chal-
lenge against defendants Kansas Public Employees Retirement
System (KPERS) and the City. The district court entered judgment
against KPERS, ruling that K.S.A. 19-4441(d) and (e), K.S.A. 74-
4957(3), K.S.A. 74-4958(1), and K.S.A. 74-4965(1), the statutes

which provided a different retirement plan for the consolidated RCLEA, contravened Art. I, § 10 (the Contract Clause) and the Fourteenth Amendment of the United States Constitution. KPERS successfully cross-claimed against the City for reimbursement under an indemnification theory. The City and KPERS appeal.

We reverse and remand for dismissal.

The dispositive issue is whether the officers' claims are barred by the statute of limitations. Our answer is, "Yes." Consequently, we do not reach the additional issues of whether: (1) the RCLEA pension plan statutes are unconstitutional as applied to the officers and (2) the district court's reimbursement order was erroneous.

## FACTS

The officers were originally hired by the City before 1970. They were enrolled in a pension plan which the City was required to provide under K.S.A. 13-14a01 *et seq*.

By electoral vote, Riley County (County) adopted a consolidated law enforcement agency under K.S.A. 19-4424 *et seq*. (In 1972, the legislature by statute authorized county elections to determine if law enforcement in the county should be consolidated.) The City and the County in 1974 consolidated the City's police department and the County sheriff department into RCLEA, with a police department branch. On December 31, 1973, all the officers ceased to be police officers for the City, and on January 1, 1974, became officers for RCLEA.

On January 1, 1974, RCLEA affiliated with the Kansas Police and Firemen's Retirement System, a subdivision of KPERS, to provide pension benefits from January 1, 1974, forward. The KPERS pension plan required an employee contribution of 7%, as opposed to the City plan's 3% employee contribution. K.S.A. 74-4965(1). The officers' first paychecks from RCLEA in 1974 contained a deduction for the higher employee contribution. The KPERS plan also: (1) increased the number of years of service required to receive retirement benefits from 22 to 25 years, K.S.A. 74-4957(3), and (2) calculated retirement benefits based upon years of service multiplied by 2% of the final average salary, as

opposed to 50% of the final salary under the City plan, K.S.A. 74-4958(1).

## The Procedural Journey

Based on the changes in their pension plans which resulted in reduced benefits, the officers filed an action under 42 U.S.C. § 1983 (1994) in federal district court on May 21, 1990, claiming damages for deprivation of rights under color of state law. On February 27, 1991, they filed this case as a 42 U.S.C. § 1983 action in the district court of Riley County. The defendants in both cases were KPERS, the County, and the City. The federal case was dismissed. The officers alleged in the federal case and here that the defendants, under color of state law, had breached their employment and pension contracts.

Venue was transferred to the district court of Shawnee County. The district court dismissed the County as a party. The City moved for summary judgment, and KPERS moved to dismiss.

## The District Court's Ruling

The district court restructured the officers' claims from a 42 U.S.C. § 1983 color of state law action to a written contract action controlled by K.S.A. 60-511 (5-year statute of limitations), denied defendants' motions, and *sua sponte* granted summary judgment to the officers, awarding damages. The district court found that the City's statutory pension obligations under K.S.A. 13-14a01 *et seq.* created a written contract between the officers and the City. The district court reasoned that the City police department was not abolished; it was consolidated with the County sheriff's office. Since the officers were not discharged from the City, they carried with them their vested City pension contracts, even when they were statutorily transferred to RCLEA and provided a KPERS pension plan as required by statute.

The district court held that the RCLEA pension plan statutes contravene Article I, § 10 and the Fourteenth Amendment of the United States Constitution and were not applicable to the officers. Each officer was awarded the difference between the amount of monthly benefits earned under both plans and the amount of ben-

efits the officer should have earned under the City's plan if the officer had been paid 50% of his or her final salary upon completion of 22 years of combined service for the City and the County. However, applying K.S.A. 60-511, the district court only allowed damages accruing from May 21, 1985, 5 years before the stipulated filing date, with interest and cost of living adjustments. The officers were held entitled to receive pension benefits in the future according to the terms and conditions of the original City plan.

The district court found that KPERS was obligated to pay the damages awarded to the officers. KPERS cross-claimed against the City, alleging that KPERS should be entitled to indemnification from the City for the damage award. The district court agreed.

Apparently, the district court also found that the contract was a continuing contract. Thus, each time KPERS allegedly underpaid the officers' retirement benefits, KPERS was engaging in a separate and independent breach of the City's original pension contract.

## DISCUSSION

### The Statute of Limitations

Our inquiry focuses on how the statute of limitations applies to this claim and when the City's pension contract was allegedly breached. Statutory and contract interpretation issues are questions of law. *Galindo v. City of Coffeyville*, 256 Kan. 455, Syl. ¶ 2, 885 P.2d 1246 (1994). We exercise unlimited, de novo review. *Martindale v. Tenny*, 250 Kan. 621, 634, 829 P.2d 561 (1992).

The officers contend that the City's pension plan, as required by statute, created a written contract which promised to provide specific pension benefits. According to the officers: (1) they had a property right in these pension benefits under *Singer v. City of Topeka*, 227 Kan. 356, 363, 607 P.2d 467 (1980), and (2) the pension benefits which they received were less than the benefits they would have received if they had been paid under the City's plan.

The defendants challenge the district court's application of the K.S.A. 60-511 statute of limitations to the officers' claims, arguing that the 3-year statute of limitations in K.S.A. 60-512 applies because the action arises out of a statutory obligation. We need not

resolve defendants' contention because we hold that even under the 5-year limitation period, the officers' claims are time barred.

The officers' cause of action accrued in 1974 when the City's pension plan was abolished by the RCLEA plan as to future benefits. Because the officers did not file this action until 1990, their claims are barred.

The officers argue that the statute of limitations issue should not be addressed because defendants did not raise it in the district court. According to the officers, the City conceded in its motion to alter or amend the district court's November 13, 1992, memorandum decision that the statute of limitations had not expired. Further, the officers claim that KPERS agreed, for purposes of the statute of limitations, that this action commenced on May 21, 1990. The district court's memorandum decision of November 13, 1992, provides: "The parties agree that for the purposes of the statute of limitations, this action would be considered to have been commenced May 21, 1990." However, May 21, 1990, relates to when this action was deemed filed, not when the cause of action accrued.

The district court transformed the officers' 42 U.S.C. § 1983 claim into a written contract claim in its memorandum decision of November 13, 1992, observing, in part: "The views expressed in this memorandum were expressed to the parties at a hearing on these motions held by the Court on April 28, 1992 and based upon these views, the Court understands that the plaintiffs no longer intend to pursue recovery under 42 USC 1983." Apparently, the parties still thought this was a 42 U.S.C. § 1983 lawsuit even after the district judge's April 28, 1992, signal. KPERS filed a memorandum in support of its motion for summary judgment on May 26, 1992, containing as a second issue "Whether the Appropriate Statute of Limitations for Actions Under 42 U.S.C. § 1983 arising in Kansas is Two Years?" The officers on June 29, 1993, filed a "Motion for Clarification of Memorandum Decision," stating:

"Plaintiffs have not moved or requested that this not be a §1983 cause of action. Any understanding that this Court may have received is in error. Plaintiffs regret this misunderstanding has occurred, but believe the record should reflect plaintiffs['] actual intent. Correcting this error will not affect the merits of the claim.

It will only set the record straight as to plaintiffs' authority in filing this action, and what legal standards would apply in a §1983 action."

KPERS and the City have not conceded the statute of limitations issue. They asserted the statute of limitations affirmative defense in answering the officers' 42 U.S.C. § 1983 petition. (The limitation on a 42 U.S.C. § 1983 action is 2 years. See K.S.A. 60-513[a][4]; *Johnson v. Johnson County Com'n Bd., et al.*, 925 F. 2d 1299, 1301 [10th Cir. 1991]). All parties thought this lawsuit was a 42 U.S.C. § 1983 action until the district court decided that it was a Contract Clause action. Both KPERS and the officers asked the district court to reconsider and analyze the case as a § 1983 action. Further, the district court granted summary judgment on behalf of the officers without the officers having moved for such relief. KPERS and the City never had an opportunity to address the issue of when the officers' Contract Clause action accrued. The statute of limitations has been a defense throughout the litigation and is here for review.

KPERS and the City carry the burden to establish the statute of limitations bar. See *Slayden v. Sixta*, 250 Kan. 23, 26, 825 P.2d 119 (1992). According to KPERS and the City, a claim arising out of a statute's unconstitutional interference with a contract accrues on the effective date of the statute, which in this case was January 1, 1974. On the first pay day after consolidation, the officers received paychecks with a 7% employee deduction contribution to the new KPERS plan, as opposed to a 3% deduction required by the City's plan. The increased deduction would have constituted a breach of contract under the City's pension plan. Thus, the officers' cause of action accrued in January 1974.

The officers argue that: (1) the statutes which created their City pension contract created a continuing contract which called for periodic performance, *i.e.*, the periodic payment of benefits; (2) under a continuing contract, a breach occurs each time the periodic performance is not performed according to the contract specifications; (3) the periodic payment of retirement benefits were not made according to the City's plan; (4) upon each breach, a separate claim accrued and the statute of limitations began to run for each claim; (5) they are allowed to sue for each underpayment of the

benefits for the 5 years immediately before the lawsuit's filing date; (6) just because they gave up their rights to sue on prior breaches of the contract, due to the expiration of the statute of limitations on those breaches, they did not give up their rights to sue on the continuing breaches of contract; and (7) *Rupe v. Triton Oil & Gas Corp.*, 806 F. Supp. 1495 (D. Kan. 1992), endorses their argument.

The officers' reliance on *Rupe* invites our analysis. In *Rupe*, plaintiffs, as sellers, entered into several gas purchase contracts with Triton, as a purchaser, between 1976 and 1979. On January 25, 1985, Triton sent an amendment letter to plaintiffs suggesting a change in the price paid for the gas, to be effective January 1, 1985. The letter asked the sellers to sign and return the letter to Triton if the changes were agreeable. The sellers did not agree. However, Triton paid for the next gas purchase on February 25, 1985, according to the terms in the amendment letter, and the sellers accepted the payment. The sellers filed their action on February 20, 1990, more than 5 years after January 25, 1985. Triton claimed the sellers' cause of action was time barred. The sellers claimed a continuing contract, in that Triton was obligated to pay monthly, with each payment less than the contract amount being a separate breach constituting a new cause of action. The federal district judge found a continuing contract. Assuming Triton's breach constituted a repudiation of the contract, the court reasoned that the breach occurred on the date Triton's performance was due (February 25, 1985) and determined that the action was timely under the 5-year statute of limitations. *Rupe* is not persuasive here. We are not dealing with a continuing contract.

From December 31, 1973, the officers were prohibited by statute from acting as City police officers and ceased contributing to the City's pension fund. The officers' opportunity to continue to accrue benefits under the City's pension plan became legally impossible on December 31, 1973. The RCLEA pension plan statutes required KPERS to include the officers under the new RCLEA plan as of January 1, 1974. The alleged breach occurred on January 1, 1974. A single cause of action accrued on that date. The controlling events were the RCLEA-KPERS legislation and the elec-

toral vote mandating the 1974 change in the pension benefits, not the subsequent payment of benefits.

The officers allege that the 1974 breach was not the only breach that occurred or the only claim which accrued. They contend that according to the terms of the City pension contract, retirement checks from KPERS would not be due until after an officer retired. The officers assert that each check was less than what it should have been; but for the RCLEA-KPERS pension plan statutes, the officers could have worked for the City until the date of retirement and continued to collect benefits under the City pension plan.

Although created by statute, the pension plan is still a contract. In *Shapiro v. Kansas Public Employees Retirement System*, 216 Kan. 353, Syl. ¶ 1, 532 P.2d 1081 (1975), we held that "[s]tate retirement systems create contracts between the state and its employees who are members of the system." The City pension plan was repudiated in 1974. It was not modified to require higher contributions and lower benefit payments. Instead, a completely new pension plan under KPERS was established and the City plan was abolished, except for benefits which had already accrued. The officers knew then they could not collect any more benefits under the City plan. The underpaid benefits checks were not independent breaches. The officers' City pension contract was breached when future benefits under the City's plan ceased, rather than each time the officers received an underpaid benefit check from KPERS.

Although not involving a periodic performance contract, *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 822 P.2d 64 (1991), teaches that once a plaintiff realizes that a defendant has no intention of honoring an agreement, the cause of action accrues. Here, the officers argue that they could not sue for the payment of money benefits until the money was due and owing. Thus, they argue, they were required to wait until the benefit payment was underpaid before they could allege that more benefits were due and owing to them and that a breach had occurred. We disagree. See *Brazelton v. Kansas Public Employees Retirement System*, 227 Kan. 443, 607 P.2d 510 (1980); *Singer v. City of Topeka*, 227 Kan. 356.

The officers' City pension contract was allegedly breached on January 1, 1974, when the new KPERS pension plan became effective and required a 7% contribution as opposed to the 3% contribution required under the City plan. The unilateral change in their benefits occurred on January 1, 1974. The officers may not delay suing for 16 years, claiming that consolidation and RCLEA-KPERS statutes unconstitutionally impaired their City pension plan contract, when they knew the effect of the statutes 16 years ago. To allow the officers to bring this action 16 years after the statutes became effective places KPERS, the City, and all other cities which may have had pension contracts statutorily altered over the years, in an untenable situation.

Reversed and remanded with instructions to dismiss the action.