**Marcia BAGBY, et al., Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.**

**No. 99–4011–RDR.**

United States District Court, D. Kansas.

Nov. 9, 2001.

Timothy H. Girard, Grant M. Glenn, Bruce J. Woner, Woner, Glenn, Reeder, Girard & Riordan, P.A., Topeka, KS, for plaintiffs.

Gordon D. Gee, Lynne C. Kaiser, Rachel H. Baker, Rodney Lee Eisenhauer, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a diversity action. Plaintiffs contend they sustained certain losses because the defendant brokerage firm breached a contract entered into by their agent.[1]

---

1. In their initial complaint, plaintiffs asserted numerous causes of action. On June 8, 2000, the court granted summary judgment to the defendant on all but one theory of recovery, breach of a written contract. The instant motion for summary judgment is directed at this claim.

This matter is presently before the court upon defendant's motion for summary judgment.

## I.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. See *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, the movant may simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671.

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## II.

In examining the briefs and exhibits filed by the parties, the court has determined that for the purposes of this motion the following facts are uncontroverted. On August 26, 1987, Sterling and Miriam Klugg established the Sterling C. Klugg and Miriam R. Klugg Trust("the Klugg Trust"). Murray F. Hardesty, a Topeka, Kansas attorney, was appointed by the Kluggs as trustee. The Klugg trust granted extensive powers to Hardesty, including the following: (1) to hold, possess, manage, and control the Trust; (2) to invest and reinvest all or any part of the Trust in stocks, bonds, securities, or other property, real or personal, in the Trustee's discretion; (3) to sell, transfer, exchange or otherwise dispose of any part of the Trust; and (4) to make any distribution or division either in kind or in money or in both.

Using Sterling Klugg's social security number, Hardesty opened Account No. 504–34423 in his own name with the defendant in September 1987. Although the account contained Sterling Klugg's social security number, Hardesty did not indicate in the documents opening the account that he was acting on behalf of anyone else. Nevertheless, Hardesty was acting as an agent for the Klugg Trust in opening the account. In opening the account, Hardesty signed a "Customer Agreement" and a "Capital Builder Account Agreement" ("CBA Agreement"). The documents have various dates on them, but all related to the opening of Account No. 504–34423. The defendant's account representative assigned to the account was Bill Johnson, Hardesty's brother-in-law. Following the opening of the account, the defendant received stocks in the name of Sterling C. Klugg and/or Miriam R. Klugg.

Sometime after the account was opened, the defendant learned that there was a discrepancy between the name on the ac-

count and the disclosed social security number. The defendant obtained a W–9 from Hardesty on November 14, 1991 showing the correct account name for Account No. 504–34423 as the Miriam R. Klugg Account. On December 18, 1991, the defendant asked Hardesty to provide it with the following documents: (1) a new CBA Agreement signed as trustee for Miriam R. Klugg; (2) a copy of the trust agreement; and (3) a Form 7028 from the Social Security Administration.

Sterling Klugg passed away in June 1988. Hardesty made eleven monetary transfers from Account No. 504–34423 during the period from August 21, 1989 to March 12, 1990. He made fifteen monetary withdrawals from Account No. 504–34423 during the period from June 12, 1990 to September 13, 1993. Hardesty had all of the monies taken from Account No. 504–34423 paid to him or others associated with him.

The defendant did not change the social security number/identification number on Account No. 504–34423 from that of Sterling Klugg to the Klugg Trust until June 1993. The defendant provided monthly account statements from August 1987 through January 1994. The last account activity, other than automatic dividend reinvestments, occurred on September 13, 1993.

On November 24, 1993, Hardesty filed a voluntary bankruptcy petition in the United States District Court for the District of Kansas. In that petition, he listed Miriam Klugg as a creditor. On December 27, 1993, Hardesty filed a statement of financial of financial affairs with the bankruptcy court. This document showed that Hardesty owed Miriam Klugg $547,063.00. The statement also showed assets of $1,612,950.73 and liabilities of $2,025,352.27. Unsecured nonpriority claims, including Mrs. Klugg's claim, totaled $2,025,352.27.

Plaintiff Marcia Bagby closed Account No. 504–34423 in April 1995 and transferred all assets to Account No. 504–43598. She closed this account in June 1995.

Plaintiffs and the defendant entered into a tolling agreement, effectively tolling the statutes of limitation as to all causes of action existing, if any, effective February 20, 1997. On December 31, 1998, plaintiffs filed this action in state court. The case was removed to this court on February 8, 1999.

### III.

In this case, plaintiffs contend that the defendant committed breach of contract in twenty-three ways. In general, plaintiffs allege that the defendant (1) failed in various ways to take proper steps in opening Account No. 504–34423; (2) failed in various ways to comply with its own policies and procedures in monitoring the account as if it were a trust account on behalf of the Kluggs; and (3) allowed orders and withdrawals to be placed in the account by Hardesty without proper power of attorney from the Kluggs.

The defendant now seeks summary judgment on the breach of contract claims. The defendant asserts that it is entitled to summary judgment because (1) plaintiffs' claims arising prior to February 19, 1992 are barred by the statute of limitations; and (2) plaintiffs' claims arising after February 19, 1992 are not actionable because all transactions after that date were in compliance with the contract and the rules and regulations incorporated therein.

The statute of limitations for breach of contract claims based on written contracts is five years. K.S.A. 60–511(1). "A cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the

plaintiff or of any actual injury it causes." *Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 54 (1990).

■ Plaintiffs have suggested that they are basing their breach of contract claim only upon the CBA Agreement, and not upon the Customer Agreement. Given the factual circumstances, the court does not find that this approach complies with Kansas law. Under Kansas law, when two or more instruments are executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter, they will be read and construed together to determine the intent, rights and interests of the parties. *In re Villa West Associates,* 146 F.3d 798, 803 (10th Cir.1998). Accordingly, the court must consider the entirety of the documents, not just one of the documents, in determining the intent, rights and interests of the parties.

■ Plaintiffs have initially suggested that their breach of contract claims are not barred by the statute of limitations because the relationship between the parties was a continuing one. Relying upon *Beltz v. Dings,* 27 Kan.App.2d 507, 6 P.3d 424 (2000), they argue that, based upon a continuing breach of contract theory, the statute of limitations did not begin to run until April 1995, when the relationship between the parties was terminated.

■ As stated previously, the law in Kansas is well-settled that breach of contract accrues at the time of the alleged breach regardless of the knowledge of the breach by the plaintiff at the time. Nevertheless, a continuing contract concept does exist in Kansas where a party is required to make payments pursuant to a contract. "Under Kansas law, a cause of action for breach of an obligation to make payments under a continuing contract generally accrues at the time each payment becomes due, thus giving rise to a separate cause of action for each failure to make payment when due." *G.N. Rupe v. Triton Oil & Gas Corp.,* 806 F.Supp. 1485, 1498 (D.Kan. 1992). This theory has only been applied where continuing payments are required. See, e.g., *Oakview Treatment Centers of Kansas, Inc. v. Garrett,* 53 F.Supp.2d 1184, 1190 (D.Kan.1999); *Beltz,* 6 P.3d at 429; *In re Estate of Moe,* 240 Kan. 242, 729 P.2d 447, 449 (1986).

The court does not find this theory applies here. The court finds no support in Kansas law for the application of the continuing contract concept based solely upon a continuing contractual relationship. See, e.g., *Johnson v. Kansas Public Employees Retirement System,* 262 Kan. 185, 935 P.2d 1049, 1054 (1997) (breach of contract claim for pension benefits accrued when prior pension plan was abolished rather than when plaintiffs received allegedly deficient benefit checks under new plan); *Western Video Collectors v. Mercantile Bank of Kansas,* 23 Kan.App.2d 703, 935 P.2d 237, 240–41 (1997) (breach of contract claim for damages suffered when bank froze plaintiff's account accrued at time bank took action, not when account was later closed). Accordingly, we find no merit to this argument.

Plaintiffs next argue that they are entitled to recover for each breach that occurred after February 19, 1992. They point to eleven withdrawals and transfers made by Hardesty after that date as separate breaches of contract. The defendant has responded that those withdrawals and transfers do not constitute breach of contract because they did not violate any contract term. The defendant asserts that the plaintiffs are suing on the contract entered into by their agent as a trustee. Accordingly, they contend that plaintiffs have ratified Hardesty's actions, and his withdrawal of funds from the account did not violate any rules for trustees.

■ The court believes that all of the breach of contract claims made by plaintiffs concerning the opening of the account are barred by the statute of limitations. All of these breaches allegedly occurred during the period when the account was opened, i.e., in September or October of 1987. All of these events occurred over five years prior to February 20, 1997. Accordingly, the court finds that the defendant is entitled to summary judgment on these claims.

■ The court is also persuaded that the defendant is entitled to summary judgment on the remaining breach of contract claims. As alleged, plaintiffs contend that Hardesty was their agent in opening Account No. 504–34423. This allegation indicates that Hardesty had the authority to open the account as trustee for the Klugg Trust. Given this allegation, Hardesty also had the authority to make transactions and withdraw funds. The court does not find that any of the provisions of the contract were breached by the actions of a trustee in withdrawing funds from the account. Plaintiffs have failed to suggest how these withdrawals were a violation of the contract entered into by an agent who had authority to open the account and to make transactions in the account.

Plaintiffs have relied upon *King v. White*, 265 Kan. 627, 962 P.2d 475 (1998) for support of their position here. In King, plaintiff sued his attorney for improperly settling a lawsuit and then forging his endorsement on the settlement checks. The Kansas Supreme Court considered whether plaintiff's ratification of the settlement agreement also ratified the attorney's actions in endorsing and depositing the settlement checks. The Court determined that plaintiff's ratification of his attorney's unauthorized settlement of the lawsuit did not constitute ratification of the attorney's forging of his endorsement on the settlement checks because two separate and distinct acts were involved. 962 P.2d at 483.

The court is not persuaded that King supports the plaintiff's position here. This case, as correctly pointed out by the defendant, differs from King. The ratification by plaintiffs of Hardesty's actions in opening the account as their agent also ratifies his actions in withdrawing or transferring funds from the account. Hardesty, as trustee of the Klugg Trust, had authority to open the account and to make transactions. His actions in making withdrawals and transfers were part of his authority as an agent of the plaintiffs.

### IV.

In sum, the court finds that the defendant is entitled to summary judgment on all breach of contract claims that arose prior to February 19, 1992, including those related to the opening of Account No. 504–34423, because they are barred by the statute of limitations. The court further finds that the defendant is entitled to summary judgment on the other breach of contract claims because the withdrawals and transfers made by Hardesty after February 19, 1992 did not violate the terms of the contract entered into by plaintiffs' authorized agent.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment on plaintiffs' claim for breach of written contract (Doc. # 49) be hereby granted. Judgment shall be entered for the defendant on this claim and against the plaintiffs.

**IT IS SO ORDERED.**